UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 17-02515 JGB (SPx) | Date | May 25, 2018 |
| Title | *Guadalupe Robles Plascencia v. United States of America, et al.* | | |

Present: The Honorable     JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**     Order (1) GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss (Dkt. No. 33); and (2) DENYING Defendant's Motion to File under Seal as MOOT (Dkt. No. 32) (IN CHAMBERS)

      Before the Court is Defendant United States of America's ("United States") motion to file under seal ("Motion to File Under Seal," Dkt. No. 32) and motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Motion," Dkt. No. 33). After considering all papers filed in support of, and in opposition to, the motions as well as arguments made at the May 21, 2018 hearing, the Court GRANTS IN PART and DENIES IN PART the United States's Motion and DENIES as MOOT the United States's Motion to File Under Seal.

### I.     BACKGROUND

      On December 19, 2017, Plaintiff Guadalupe Robles Plascencia ("Plaintiff") filed a complaint against the United States, Immigration and Customs Enforcement ("ICE") Does 1-8, San Bernardino County, San Bernardino County Sheriff's Department, and California Does 1-10. ("Complaint," Dkt. No. 1.) She alleges eleven cause of action: (1) Federal Tort Claims Act ("FTCA"): false arrest/false imprisonment against Defendant United States; (2) FTCA: negligence against Defendant United States; (3) FTCA: intentional infliction of emotional distress, or in the alternative negligent infliction of emotional distress, against Defendant United States; (4) FTCA: the Bane Act (Cal. Civ. Code § 52.1(a)) against Defendant United States; (5) Fourth Amendment (<u>Bivens</u>): unreasonable seizure against Defendants ICE Does 1-8; (6) California Tort Claims Act (Cal. Gov't Code §§ 815.2, 820): false arrest/false imprisonment against Defendants San Bernardino County, San Bernardino County Sheriff's Department, and

California Does 1-10; (7) California Tort Claims Act (Cal. Gov't Code §§ 815.2, 820): negligence against Defendants San Bernardino County, San Bernardino County Sheriff's Department, and California Does 1-10; (8) California Tort Claims Act (Cal. Gov't Code §§ 815.2, 820): intentional infliction of emotional distress, or in the alternative negligent infliction of emotional distress, against Defendants San Bernardino County, San Bernardino County Sheriff's Department, and California Does 1-10; (9) the Bane Act (Cal. Civ. Code § 52.1) against Defendants San Bernardino County, San Bernardino County Sheriff's Department, and California Does 1-10; (10) Fourth and Fourteenth Amendment (42 U.S.C. § 1983): unreasonable seizure against Defendants California Does 1-10; and (11) Fourteenth Amendment (42 U.S.C. § 1983): equal protection against Defendants California Does 1-10. On January 10, 2018, Defendants San Bernardino County and San Bernardino County Sheriff's Department filed an answer. (Dkt. No. 22.) They filed an amended answer on January 31, 2018. (Dkt. No. 25.)

On March 22, 2018, the United States of America filed its Motion to File Under Seal and Motion to Dismiss. Plaintiff filed an opposition to the United States's Motion to Dismiss on April 12, 2018. ("Opposition," Dkt. No. 35.) The United States filed its reply on May 3, 2018. ("Reply," Dkt. No. 36.) The Court held a hearing on May 21, 2018.

## II.      FACTUAL ALLEGATIONS

In her Complaint, Plaintiff asserts four causes of action against the United States: (1) false arrest/false imprisonment; (2) intentional infliction of emotional distress, or in the alternative, negligent infliction of emotional distress; (3) violation of the Bane Act (Cal. Civ. Code § 52.1); and (4) negligence. Plaintiff alleges the following.

Plaintiff is a United States citizen, originally from Mexico, and naturalized over two decades ago. (Compl. ¶ 1.) She has resided in San Bernardino, California for almost 40 years. (Id.) She is 60 years old. (Id.)

On March 29, 2017, Plaintiff and her daughter went to the Ontario Police Department to retrieve their property recovered from the scene of a car accident. (Id. ¶¶ 2, 18.) Plaintiff showed her valid California driver's license and gun registration to police officers to recover her firearm. (Id. ¶ 19.) The officers requested Plaintiff wait in a small room. (Id. ¶ 20.) Instead of returning with her property, two officers came back and told Plaintiff that they were arresting her based on a decade-old warrant. (Id. ¶ 20.) The warrant was for "disobeying a court order," but no other legal basis for the warrant was provided to Plaintiff. (Id. ¶ 21.) Plaintiff was never given her Miranda rights orally or in writing. (Id. ¶ 22.) The officers placed Plaintiff in a cell, removed her after about seven hours to take her fingerprints, and then returned Plaintiff to the cell. (Id. ¶ 23.)

After an indeterminate amount of time, officers handcuffed Plaintiff, placed a chain around her waist, and escorted her to a truck, which transported her to the West Valley Detention Center in Rancho Cucamonga. (Id. ¶ 24.) After Plaintiff was held in a cell for about three hours, a Sheriff's deputy directed her to sign a document to inform the Mexican consulate

of her arrest. (Id. ¶ 25.) Plaintiff explained she is a United States citizen and could produce her passport, if given the opportunity. (Id.) The deputy informed Plaintiff that the document would help her obtain an attorney, and she signed the consular notification. (Id.) Plaintiff remained at the West Valley Detention Center overnight. (Id. ¶ 26.)

The following afternoon, a deputy accompanied Plaintiff to a desk and asked her to sign a document, entirely in English, to notify ICE of her release. (Id. ¶ 27.) Plaintiff inquired why ICE needed to be notified, as she was a United States citizen, and the deputy told her that she would not be released unless she signed the form. (Id.) Plaintiff signed the form. (Id.) A deputy then gave Plaintiff her driver's license, gun registration, and other documents related to her arrest. (Id.) However, the sheriff's department did not allow Plaintiff to leave. (Id. ¶ 28.) They told her to go into a small cell, where she was to wait for further instruction. (Id.) The cell door remained open, but Plaintiff did not believe she was allowed to leave. (Id.) Plaintiff alleges she was directed to wait in the cell to delay her departure until ICE arrived. (Id.) After 10 to 15 minutes, Plaintiff was told she could leave. (Id. ¶ 29.) Plaintiff alleges the sheriff's department prolonged her detention because ICE agents intended to take Plaintiff into custody. (Id. ¶ 30.) "The San Bernardino County Sheriff's Department maintains an unlawful policy, custom, or practice of delaying the release of people in their custody whom they no longer have a legal basis to detain, including by unreasonably extending the administrative processes associated with their release from County custody, in order to aid and abet ICE arrests." (Id.)

As Plaintiff proceeded toward the exit, two men approached her, identified themselves as ICE agents, and arrested her. (Id. ¶ 31.) Plaintiff again explained that she is a United States citizen. (Id. ¶ 32.) She said she could provide her passport as proof, if given the opportunity. (Id. ¶ 33.) Her pleas fell on deaf ears, and the agents took her to an unmarked vehicle where two additional ICE agents waited. (Id.) They handcuffed Plaintiff before putting her in the back of the vehicle, where she was held for approximately 30 minutes before they informed her that they were transporting her to ICE's San Bernardino Field Station. (Id. ¶ 35.) The ICE agents escorted Plaintiff, still handcuffed, inside the ICE Field Station and instructed her to wait. (Id. ¶ 36.) Another ICE agent laughed at Plaintiff and said, "'Here, you are nobody, you're nothing.'" (Id. ¶ 37.) The ICE agent did not answer Plaintiff when asked why they were arresting and detaining her. (Id.) After some time had passed, an agent removed Plaintiff's handcuffs. (Id. ¶ 38.) Another ICE agent asked Plaintiff for her driver's license, which she produced. (Id.) Again, she told the agent that she was a United States citizen and her daughter had her passport. (Id.) The agent said he could review data on a computer system to determine her citizenship status, but that he knew she was lying. (Id.) Agents repeatedly accused Plaintiff of identity theft and using a false name and documentation. (Id.) They threatened her with deportation. (Id.)

Plaintiff made multiple requests to make a telephone call, but was not permitted to do so. (Id. ¶ 39.) An agent then called Plaintiff's daughter to inform her that Plaintiff was detained at the ICE San Bernardino field station. (Id.) Plaintiff was allowed to speak with her daughter and asked her to bring Plaintiff's passport. (Id.) Plaintiff's daughter arrived and provided the passport. (Id. ¶ 40.) An ICE agent reviewed it and input information into the computer. (Id.) Another ICE agent retrieved Plaintiff's gun registration and told the first agent that Plaintiff

should be released because she was a United States citizen. (Id.) The first agent used expletives and said "No," and that she had to wait. (Id.) That agent then asked Plaintiff questions about her family and recent travels. (Id. ¶ 41.) The agent said that because Plaintiff answered almost everything correctly, he could release her from custody, which he proceeded to do. (Id.)

Plaintiff alleges that ICE conducted database searches for information about her on the Central Index System ("CIS") of U.S. Citizenship and Immigration Services ("USCIS"), among other databases. (Id. ¶ 42.) These searches yielded no information about Plaintiff's citizenship status. (Id.) CIS is not a complete repository of information and does not provide a complete account of whether individuals should be removed. (Id. ¶ 44.) Naturalization and citizenship applications created prior to 2008 are not consistently available in the CIS database and applications created before 1994 are not available at all. (Id. ¶ 45.) Further, the CIS database contains errors, including outdated information and misspelling of names as well as erroneous immigration status. (Id. ¶ 46.) These errors are known throughout the Department of Homeland Security ("DHS"), as the DHS Office of the Inspector General and the Government Accountability Office have reported the errors and these errors have resulted in litigation. (Id.) ICE is aware of the inaccuracies in these databases, but still relies on them. (Id. ¶ 48.) San Bernardino County Sheriff's Department and its officers also know of the inaccuracies. (Id. ¶ 49.) This practice contributes to the unlawful arrest of United States citizens at the hands of ICE. (Id. ¶ 50.) Defendants ICE Does 1-8 arrested Plaintiff based on her birth in Mexico and without any information in CIS or other database. (Id. ¶ 51.) She was arrested solely because of her national origin, place of birth, race, ethnicity, or language ability. (Id. ¶ 52.)

The San Bernardino County Sheriff's Department collaborates with ICE. (Id. ¶ 53.) The San Bernardino County Sheriff's Department receives immigration detainers from ICE, which requests that a law enforcement agency maintain custody of an individual for up to forty-eight hours after that individual is due for release so that ICE can take custody. (Id. ¶ 54.) The San Bernardino County Sheriff's Department treats the detainer as a request for notification of an individual's release date and notifies ICE of the release dates of every individual for whom they receive a detainer. (Id. ¶ 55.) The San Bernardino County Sheriff's Department also detains individuals beyond the time they would otherwise be released to allow for ICE's arrival. (Id. ¶ 56.)

As a result of the events described above, Plaintiff is fearful and experiences profound anxiety and physical unease when she sees a police officer drive by. (Id. ¶ 60.) Consequently, Plaintiff has been unable to open her shop on several occasions. (Id.) She is afraid to travel to Mexico and has not left the country for fear that she would be denied reentry. (Id.) "Plaintiff has suffered and continues to suffer from serious emotional distress, pain, suffering, trauma, worry, anxiety, humiliation, and embarrassment, as well as physical symptoms, such as headaches, nausea, loss of sleep, fatigue, and anxiety attacks. Ms. Plascencia has sought treatment from professional therapists." (Id. ¶ 61.) She has experienced loss of income due to her inability to work during her detention and subsequent recovery. (Id. ¶ 62.)

### III.     LEGAL STANDARD

**A. Motion to File Under Seal**

There is a strong presumption of public access to judicial records and documents. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 n.7 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 677 (9th Cir. 2010). The presumption applies to pleadings filed with the court and extends to discovery material attached to those pleadings. Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1134 (9th Cir. 2003). Although a request to seal judicial records offends the presumption in favor of public access, the right of access "is not absolute." Id. at 1135.

Generally, two standards govern requests to seal documents: the "compelling reasons" standard and the "good cause" standard. Pintos, 605 F.3d 665 at 677. When a request to seal is more than tangentially related to a cause of action, the "party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the compelling reasons standard. That is, the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure . . . ." Kamakana v. City and Cnty. of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006). On the other hand, when the documents sought to be sealed are only "tangentially related" to the underlying cause of action, the court applies a "good cause" standard. Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1097 (9th Cir. 2016). The Ninth Circuit in Chrysler recognized that whether a motion is dispositive or nondispositive should not automatically dictate which standard a court should apply. Id. at 1098 ("When using the words 'dispositive' and 'nondispositive,' we do not believe our court intended for these descriptions to morph into mechanical classifications. Rather, these descriptive terms are indicative of when a certain test should apply.") The Ninth Circuit continued, explaining: "The focus in all of our cases is on whether the motion at issue is more than tangentially related to the underlying cause of action." Id. at 1099 (citations omitted); see also Miotox LLC v. Allergan, Inc., No. 2-14-cv-08723 ODW (PJWx), 2016 WL 3176557, at *1 (C.D. Cal. June 2, 2016) (examining whether the documents were tangentially related to the cause of action).

**B. Motion Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

A party may seek dismissal of an action for lack of subject matter jurisdiction under Rule 12(b)(1) "either on the face of the pleadings or by presenting evidence." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); see also White v. Lee, 227 F.3d 1217, 1242 (9th Cir. 2000). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary

judgment." Id.  The court "need not presume the truthfulness of the plaintiff's allegations," White, 227 F. 3d at 1242, and may generally "resolve factual disputes concerning the existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).  "Where jurisdiction is intertwined with the merits," the Court must "[a]ssume the truth of the allegations in a complaint . . . unless controverted by undisputed facts in the record."  Warren, 328 F.3d at 1139 (9th Cir. 2003).

**C. Motion Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15-05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV.    DISCUSSION

**A. Motion to File Under Seal**

The United States seeks to seal identifying information of (1) Plaintiff; and (2) the subject of an immigration detainer, Guadalupe Placentia Martinez-Diaz aka Maria Guadalupe Plasencia. (Motion to File Under Seal at 2.)  The Court DENIES the Motion to File under Seal as MOOT because the Court does not consider the documents the United States seeks to file under seal. The United States filed its Motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Generally "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by Galbraith v. Cty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).  Federal Rule of Civil Procedure 12(b)(6) provides that when:

> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b)(6).  There are two exceptions to the rule that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion: (1) a court can take judicial notice of "matters of public record"; and (2) a court can take into account documents not attached to the complaint if their authenticity is not challenged and the complaint necessarily relies on them.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), overruled on other grounds by Galbraith v. Cty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).  The Court does not find the documents filed with the Motion to File under Seal fit into either of these exceptions.

Further, the United States's Motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure appears to be a facial, not a factual, challenge.  The facts the United States seeks to file under seal do not concern the Court's jurisdiction but the merits of the United States's Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Thus, the Court declines to consider these documents and DENIES the United States' Motion to File Under Seal as MOOT.

**B. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

The United States argues the discretionary function exception to the FTCA applies and bars Plaintiff's claims. (Mot. at 4-8.)  It contends the actions of ICE agents fall within the discretionary function exception. (Id. at 6.)  Further, the United States argues ICE agents had to take into account relevant political and social implications of detaining the wrong person and weigh those considerations against the risk of mistakenly allowing the subject of a detainer to go free.  (Id. at 7.)  In sum, the United States maintains that because "the discretionary function

applies to ICE agents' discretionary investigative process, the [C]ourt lacks subject matter jurisdiction over this action." (Id. at 7-8.)

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.IC. v. Meyer, 510 U.S. 471, 474 (1994). The FTCA grants such a waiver and allows suits against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). There are, however, exceptions to this broad waiver of sovereign immunity. The discretionary function exception provides the United States immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused." 28 U.S.C. § 2680(a). The discretionary function exception aims to avoid judicial second-guessing of administrative decisions grounded in social, economic, and political policy. United States v. Gaubert, 499 U.S. 315, 323 (1991). "The Government bears the burden of showing that the discretionary function exception applies." al-Kidd v. Gonzales, No. 1:05-CV-093-EJL-MHW, 2012 WL 4470782, at *2 (D. Idaho Sept. 27, 2012) (citing Reed v. U.S. Dept. of Interior, 231 F.3d 501, 504 (9th Cir.2000)).

The United States Supreme Court has established a two-part test to decide whether the discretionary function exception applies. Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). "First, the court must determine whether the action is a matter of choice for the employee, such that it involves an element of judgement or choice. [Citation omitted.] Second, the exception only applies to actions based on considerations of public policy." al-Kidd, 2012 WL 4470782, at *2 (citing Berkovitz, 486 U.S. at 537). In deciding whether the discretionary function exception applies, a court should look at the conduct at issue rather than the status of the actor. Berkovitz, 486 U.S. at 536.

Usually, the discretionary function exception protects police investigations, as they involve policy considerations. See Alfrey v. United States, 276 F.3d 557 (9th Cir. 2002). "[T]he discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation so long as the agency does not violate a mandatory directive." Vickers v. United States, 228 F.3d 944, 951 (9th Cir. 2000).

The United States argues that the discretionary function applies to bar Plaintiff's claims under the FTCA. (Mot. at 4-8.) The Court disagrees. The exception only applies if the "decision made is a permissible exercise of policy judgement." Conrad v. United States, 447 F.3d 760, 765 (9th Cir.2006). In Galvin v. Hay, 374 F.3d 739, 758 (9th Cir. 2004), the Ninth Circuit explained:

"In general, governmental conduct cannot be discretionary if it violates a legal mandate....[T]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply." Nurse [v. United States], 226 F.3d at 1002 & n. 2 [(9th Cir. 2000)]. As "[f]ederal officials do not possess discretion to violate constitutional rights," United States Fid. & Guar. Co. v. United States, 837 F.2d 116, 120 (3d Cir. [1988]) (cited in Nurse, 226 F.3d at 1002), cert. denied, 487 U.S. 1235, 108 S. Ct. 2902, 101 L.Ed.2d 935 (1988), the discretionary function exception does not apply here.

In al-Kidd, the plaintiff brought an FTCA claim based on abuse of process and false imprisonment. 2012 WL 4470782 at *1. Pursuant to a motion to dismiss, the court examined whether the discretionary function exception applied to the actions of the investigative officers and determined it did not because the plaintiff alleged that the officers violated a statute during the investigation. al-Kidd v. Gonzales, No. 05-093-S-EJL, 2006 WL 2682346, at *9 (D. Idaho Sept. 18, 2006). "Thus, if an officer violates the constitution or a statute during his or her investigation, that action is not protected by the discretionary function." Id. The plaintiff there alleged abuse of the material witness statute, and if the allegations were true, the court determined the plaintiff sufficiently stated a claim for abuse of process under the FTCA. Id. The court continued: "Whether the discretionary function exception applies in this case raises questions not proper on a motion to dismiss." Id.

Similarly, in Nurse, 226 F.3d at 1002, the plaintiff alleged that the defendants "promulgated discriminatory, unconstitutional policies, which they had no discretion to create." The Ninth Circuit stated, "[i]n general, governmental conduct cannot be discretionary if it violates a legal mandate." Id. (citing United States Fid. & Guar. Co., 837 F.2d at 120). The court concluded that "[b]ecause of the bare allegations of the complaint, [it could not] determine at this stage of the proceedings whether the acts of the policy-making defendants violated the Constitution, and if so, what specific constitutional mandates they violated." Id. Those questions, the court reasoned, could not always be easily answered on a motion to dismiss and would be fleshed out as the case developed. Id. The Ninth Circuit held "that the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply." Id. at 1002 n.2.

The United States claims Plaintiff does not point to any statute, regulation, rule, or policy that mandates any specific course of conduct by ICE. (Mot. at 6.) However, the burden is on the Government to show that the discretionary function exception applies. al-Kidd, 2012 WL 4470782, at *2 (citation omitted).

The United States relies on two out-of-circuit cases, neither of which persuade the Court. In Tsolmon v. United States, 841 F.3d 378, 383 (5th Cir. 2016), the officers conducted a thorough investigation into the plaintiff's immigration status before detaining him. Tsolmon alleged, among other claims, false arrest and false imprisonment. Id. at 381. The district court determined that the discretionary function exception applied and "based that conclusion largely

on the amended complaint, which focuse[d] on the steps the officers took to try to verify Tsolmon's immigration status." Id. at 383. While in Tsolmon the plaintiff's claims focused on the investigation and the investigative steps, here Plaintiff's claims center on ICE agents' ultimate decision to arrest her without probable cause. (See Compl. ¶¶ 31-41.)

The United States also cites Mesa v. United States, 123 F.3d 1435 (11th Cir, 1997), which is similarly inapposite. (Mot. at 6-7.) In Mesa, the plaintiff alleged negligence or recklessness in the execution of an arrest warrant. 123 F.3d at 1436-37. Plaintiff here notes that in Mesa (1) a judge issued an arrest warrant, and (2) the subject of the arrest warrant and the mistakenly-arrested individual shared the exact same first, middle, and surnames. (Opp. at 8.) Mesa, however, is distinguishable in that the arrest warrant included the plaintiff's exact first, middle, and last name. 123 F.3d at 1437. Further, Mesa did not concern the decision to arrest the plaintiff without probable cause, at issue here; rather, it concerned the "decision as to how to locate and identify the subject of the arrest warrant prior to the service of the warrant." Id. at 1438. The United States claims ICE agents relied on an expired ICE detainer for another person when they detained Plaintiff. (Mot. at 2.) However, the United States did not substantiate why the Court should consider this extrinsic evidence in deciding the Motion, and thus the Court cannot take into account such evidence on a Rule 12(b)(1) facial challenge or a Rule 12(b)(6) motion.

Nor is the Court persuaded by Artega-Ruiz v. United States, 705 Fed. App'x 597 (9th Cir. 2017), in which the Ninth Circuit affirmed the district court's grant of a motion to dismiss. There, the plaintiff's "claims turn[ed] on whether federal immigration agents negligently or wrongfully failed to discover" that the plaintiff was a United States citizen. Id. at 598. The Ninth Circuit determined that the plaintiff's "claims were barred by the discretionary function exception because the manner in which the agents investigated [the plaintiff's] eligibility for removal [met] both prongs of the Berkovitz test." Id. The claims focused on the investigation, whereas here the causes of action are grounded in ICE agents' decision to arrest and detain Plaintiff absent probable cause. (See Compl. ¶¶ 31-41.)

Plaintiff cites Garcia v. United States, No. SACV 09-1169 DOC (RNBx), 2011 WL 13224877 (C.D. Cal. Sept. 19, 2011), which the Court finds instructive. (Opp. at 10 n.11.) In Garcia, District Judge David Carter denied summary judgment as to the plaintiff's false arrest/false imprisonment claim and determined that the discretionary function exception did not apply. 2011 WL 13224877, at *7. The court distinguished between a claim based on negligent investigation and one based on the actual arrest and subsequent detention. Id. at *6.

Thus, at this stage of the proceeding, the Court cannot determine whether a constitutional violation occurred and determines, to the extent Plaintiff alleges a violation based on the arrest and subsequent detention, the discretionary function exception does not apply. The Court thus DENIES the United States's Motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**C. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

   1. **False Arrest/False Imprisonment Claim**

   A false imprisonment claim requires (1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief. Bocanegra v. Jakubowski, 241 Cal. App. 4th 848, 855 (2015).  The Government contends ICE agents acted reasonably (i.e., with probable cause) and thus Plaintiff has failed to sufficiently state a claim.  The United States's "reasonableness" argument, however relies on facts it attempts to introduce under seal, which the Court will not consider at this stage.  As Plaintiff notes, however, usually, reasonableness is a question of fact for the jury.  (Opp. at 11); see also Robinson v. City and Cty. of San Francisco, 41 Cal. App. 3d 334, 337 (1974) (stating, on summary judgment, that "[w]here evidence is fairly subject to more than one interpretation, the question of *reasonableness* is a triable factual issue for the jury to decide.").

   In Castro v. City of Hanford, 546 F. Supp. 2d 822, 829 (E.D. Cal. 2008), the court, on a motion for summary judgment, distinguished Robinson because in Castro, "there was no factual question as to whether the officers had a reasonable belief that plaintiff was the person named in the warrant."  Id. at 829.  Here, Plaintiff contends there was no probable cause to believe she was a noncitizen and Plaintiff was arrested based on her race, ethnicity, language ability, and/or national origin.  (Compl. ¶ 65.)  The United States argues ICE agents had reason to believe Plaintiff was subject of the detainer and within 30 minutes of their investigation determined that she was not and released Plaintiff.  (Reply at 8.)

   The Court determines a motion to dismiss is not the appropriate time to determine reasonableness, particularly where here, Plaintiff alleges the officers lacked probable cause and their actions (i.e., the detention of Plaintiff) were unreasonable.  In fact, Plaintiff alleges that one ICE agent told another that Plaintiff was a citizen and the second agent still refused to release her; thus, reasonableness cannot be established as a matter of law.  (See Compl. ¶ 40.)  Thus, the Court DENIES the United States's Motion as to this claim.

   2. **Negligence**

   Negligence requires a showing that: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, and (3) the breach was a proximate or legal cause of the plaintiff's injuries." Dougherty v. Bank of Am., N.A., 177 F. Supp. 3d 1230, 1257 (E.D. Cal. 2016) (citing Gilmer v. Ellington, 159 Cal. App. 4th 190, 195 (2008)).  The United States contends Plaintiff's claim is "merely derivative of her false imprisonment/false arrest claim." (Mot. at 12.)  Thus, the United States urges the Court to dismiss Plaintiff's negligence claim "to the extent the court finds the discretionary function applies, . . . or dismisses the false arrest/false imprisonment claim and/or the Bane Act claim." (Id.)  The Court, however, finds Plaintiff has sufficiently stated a claim for false imprisonment/false arrest.  Thus, the United States's arguments are unpersuasive, and the Court DENIES the United States' Motion as to this claim.

### 3. Intentional Infliction of Emotional Distress, or in the Alternative, Negligent Infliction of Emotional Distress

"The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. [Citations.] ... Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Miller v. Fortune Commercial Corp., 15 Cal. App. 5th 214, 228–29 (2017) (internal quotation marks and citation omitted).

In its Motion, the United States recites the standard for negligent infliction of emotional distress, but does not explicitly argue Plaintiff fails to state a claim. (See Mot. at 9-10.) Nor does Plaintiff explicitly discuss negligent infliction of emotional distress. (See Opp. at 12-14.) "A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." Wong v. Tai Jing, 189 Cal. App. 4th 1354, 1377 (2010) (citations omitted). The California Supreme Court has explained that a plaintiff must show that the emotional distress was "serious" to recover damages for negligent infliction of emotional distress when there is no accompanying personal, physical injury. Id. (citing Molien v. Kaiser Found. Hosps., 27 Cal. 3d 916, 927-30 (1980)).

The United States argues ICE's conduct was not extreme and outrageous and Plaintiff's emotional trauma, as a matter of law, is insufficient to allege intentional infliction of emotional distress. (Mot. at 10.) Whether ICE's conduct was extreme and outrageous presents a factual question inappropriate for resolution on a motion to dismiss. In Burnett v. Chimney Sweep, 123 Cal. App. 4th 1057, 1069, (2004), the California Court of Appeal reversed the trial court's grant of the defendant's motion for judgment on the pleadings and stated:

> Chimney Sweep contends that the complaint's allegations do not meet the standard of extreme and outrageous conduct required to state a claim. The contention is without merit. In Stoiber v. Honeychuck (1980) 101 Cal.App.3d 903, 921, 162 Cal.Rptr. 194, the appellate court concluded that the plaintiff tenant had stated a cause of action for intentional infliction of emotional distress by alleging that she had suffered "'extreme emotional distress' as a result of the [landlord's and property manager's] 'knowing, intentional, and willful' failure to correct defective conditions of the premises." The Stoiber court observed that whether the failure to act was extreme and outrageous "under the present allegations, presents a factual question—it cannot be said as a matter of law that [plaintiff] has not stated a cause of action." (Id., at p. 922, 162 Cal.Rptr. 194.)

Here, Plaintiff alleges that ICE agents abused their positions of power when they "denigrated, threatened, and insulted" Plaintiff. (Compl. ¶ 79.) Notably, Plaintiff alleges that they threatened

to deport her to Mexico.  (Id.)  See Mendia v. Garcia, 165 F. Supp. 3d 861, 879 (N.D. Cal. 2016) (finding that where ICE agents allegedly told the plaintiff "we're deporting your ass!," the plaintiff stated plausible facts to support an intentional infliction of emotional distress claim).  In its Reply, the United States contends Plaintiff has not alleged in her Complaint that she was threatened with deportation.  (Reply at 9.)  The United States is mistaken.  (See Compl. ¶ 79.)  Thus, the Court finds unpersuasive the United States's argument that ICE's alleged conduct was not extreme as a matter of law.

As to the contention that Plaintiff's emotional trauma is insufficient to allege intentional infliction of emotional distress, the Court also finds that argument lacks merit.  The United States cites Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1246 (9th Cir. 2013), which affirmed the district court, on a motion for summary judgment, and held that the plaintiff's injuries of "'[a]nxiety, sleeplessness, upset stomach [and] sometimes muscle twitches'" did not rise to the level of "'severe.'"  The district court in Lawler stated, "Plaintiff has adduced no evidence of emotional distress, let alone established severe or extreme emotional distress as a result of the August 5, 2009 store visit and interaction with Schmitz."  Lawler, No. 10-CV-01131-LHK, 2011 WL 1466129, at *10 (N.D. Cal. Apr. 15, 2011), aff'd, 704 F.3d 1235 (9th Cir. 2013).  In Lawler, however, the court did not discuss whether the distress was enduring.  Further, Lawler was decided on a motion for summary judgment, not a motion to dismiss, and the court there had to determine whether the plaintiff presented evidence, not alleged facts, such that a reasonable jury could find in his favor.

In Mendia, 165 F. Supp. 3d at 878-79, cited by Plaintiff, the court found sufficient the plaintiff's allegations that she suffered grief and depression, lasting over two years and resulting in a gastrointestinal disorder.  Here, Plaintiff alleges headaches, nausea, loss of sleep, fatigue and anxiety exceeding ten months such that she has sometimes been unable to work and perform everyday activities.  (Compl. ¶¶ 61-62, 81.)

In McTimmonds v. Alcohol & Drug Testing Services, LLC, No. CIV. 2:14-2124 WBS, 2014 WL 6835636, at *4 (E.D. Cal. Dec. 3, 2014), the Eastern District of California discussed the pleading standard required to allege severe emotional distress.  The court wrote:

> Plaintiff alleges that as a result of the technician's comments he suffered 'anguish, humiliation, discomfort, worry, anxiety, annoyance, and severe emotional distress.' (Compl.¶ 43.)  The Complaint is silent, however, as to whether the distress was enduring.  Under Iqbal, the conclusory allegation that plaintiff suffered severe emotional distress is insufficient.

Id.

Here, Plaintiff alleges her distress was enduring—"headaches, nausea, loss of sleep, fatigue, and anxiety for more than ten months."  (Compl. ¶ 81.)  In Lawler, the court did not discuss whether the symptoms were enduring and this Court considers the length here a

significant factor in determining whether the distress is severe. Accordingly, the Court finds Plaintiff's allegations sufficient to state a claim.

4. **The Bane Act**

California Civil Code Section 52.1, the Bane Act, authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." Sahymus v. Tulare Cty., No. 1:14–cv–01633–MCE–GSA, 2015 WL 3466942, at *6 (E.D. Cal. June 1, 2015) (quoting Jones v. Kmart Corp., 17 Cal. 4th 329, 331 (1998)). A plaintiff who alleges a claim pursuant to the Bane Act "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." Allen v. City of Sacramento, 234 Cal. App. 4th 41, 67 (2015), as modified on denial of reh'g (Mar. 6, 2015). "Speech alone is not sufficient to support [a Bane Act violation], except upon a showing that the speech itself threatens violence." Cal. Civ. Code § 52.1(j).

"The Bane Act's requirement that interference with rights must be accomplished by threats, intimidation or coercion has been the source of much debate and confusion." Cornell v. City & Cty. of San Francisco, 17 Cal. App. 5th 766, 801 (2017), as modified (Nov. 17, 2017), review denied (Feb. 28, 2018) (alterations and quotation marks omitted); see also K.T. v. Pittsburg Unified Sch. Dist., 219 F. Supp. 3d 970, 982 (N.D. Cal. 2016) ("Courts deciding whether the 'threat, intimidation or coercion' must be distinct from the alleged underlying constitutional or statutory violation have come out all over the map."). The United States cites Shoyoye v. Cty. of Los Angeles, 203 Cal. App. 4th 947, 959 (2012) for the proposition that "[t]he statute requires a showing of coercion independent from the coercion inherent in the [constitutional violation]." (See Mot. at 11.) In 2015, the California Court of Appeal reiterated the rule articulated in Shoyoye and affirmed the dismissal of a Bane Act claim for failure to allege coercion beyond the coercion inherent in the wrongful detention. Allen, 234 Cal. App. 4th at 69 ("Consistent with Shoyoye, we conclude a wrongful arrest or detention, without more, does not satisfy both elements of section 52.1.") In Lyall v. City of Los Angeles, 807 F.3d 1178, 1196 (9th Cir. 2015), the Ninth Circuit acknowledged these decisions and wrote, "[n]umerous California decisions make clear that a plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act."

After Lyall, the California Court of Appeal provided some clarification of the requirements to allege a Bane Act claim. The court in Cornell considered a Bane Act claim arising from police officers' wrongful arrest. Id. at 795. The court stated: "We see no reason that, in addition, the required 'threat, intimidation or coercion," whatever form it may take, must also be transactionally 'independent' from a properly pleaded—and proved—unlawful arrest." 17 Cal. App. 5th at 800. The court concluded where "an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the

coercion 'inherent' in the wrongful detention." Id. at 801-02.  Cornell enunciated the test for courts to apply:

> [It] essentially set[] forth two requirements for a finding of "specific intent" .... The first is a purely legal determination.  Is the ... right at issue clearly delineated and plainly applicable under the circumstances of the case?  If the trial judge concludes that it is, then the jury must make the second, factual, determination.  Did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that ... right?  If both requirements are met, even if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a matter of law to have acted [with the requisite specific intent]—i.e., "in reckless disregard of constitutional [or statutory] prohibitions or guarantees."

Id. at 803 (internal quotation marks omitted).  In sum, Cornell explained "nothing in the text of the Bane Act requires that the coercion element be separate from the underlying constitutional or statutory violation."  Scalia v. Cty. of Kern, et al., No. 1:17-cv-01097-LJO-SKO, 2018 WL 1726616, at *12 (E.D. Cal. Apr. 10, 2018).  The Court finds Cornell instructive and predictive of how the California Supreme Court might decide.  See Capital Dev. Co. v. Port of Astoria, 109 F.3d 516, 519 (9th Cir. 1997) (stating that the court must "use [its] best judgment to predict" how the California Supreme Court would decide the issue).  While the Ninth Circuit has discussed this issue in Lyall, the Court is not required to follow Lyall because the Ninth Circuit's interpretation of state law is "only binding in the absence of any subsequent indication from the California courts that [the Ninth Circuit panel's] interpretation was incorrect."  Owen ex rel. Owen v. United States, 713 F.2d 1461, 1464 (9th Cir. 1983).

In her Complaint, Plaintiff premises violations of the Bane Act on constitutional violations, namely the Fourth Amendment and the Fifth Amendment, and California constitutional violations.  (See Compl. ¶ 84.)  The United States argues: (1) to the extent Plaintiff's Bane Act claim is premised on the interference with her Fourth and Fifth Amendment rights, the Court lacks subject matter jurisdiction; and (2) to the extent the claim is based on the interference with Plaintiff's rights under the California Constitution, she fails to state a claim.  (Mot. at 11-12.)  The Court takes each argument in turn.

As to whether the Court has subject matter jurisdiction, the United States argues it has not waived its sovereign immunity with respect to federal constitutional tort claims.  (Id. at 11.)  The Court agrees.  Plaintiff relies on Lu v. Powell, 621 F.3d 944, 949-50 (9th Cir. 2010), and contends Lu stands for the proposition that the Bane Act is a "viable tort claim[]" when predicated on a violation of constitutional or statutory rights. (Opp. at 14-15.)  In Lu, the court held that a claim under the Bane Act constituted a statutory tort and permitted the plaintiffs to pursue the violation under the FTCA.  Lu, 621 F.3d at 950; see also Anonymous v. United States, No. 16-0725, 2017 WL 1479233, at *4 (S.D. Cal. Apr. 25, 2017) ("In Lu v. Powell . . . the Ninth Circuit explicitly characterized a Bane Act claim as a type of 'tort' and allowed plaintiff to pursue the violation under the FTCA.")  The United States claims Lu and Anonymous do not

distinguish between federal and state constitutional torts. (Reply at 10.) <u>Lu</u> stated, the defendant Powell "attempted such interference with the plaintiffs' right to asylum." <u>Lu</u>, 621 F.3d at 950. <u>Anonymous</u> does not explicitly discuss Bane Act violations premised on a constitutional violation. <u>See</u> <u>Anonymous</u>, 2017 WL 1479233. The Court finds when the underlying Bane Act claim relies exclusively on a constitutional violation, it cannot be maintained through the FTCA.

In <u>Escamilla v. United States</u>, No. 2:17-cv-07748-ODW (MRWx), 2018 WL 1684307, at *1,8 (C.D. Cal. Apr. 4, 2018), the plaintiffs alleged various federal and state law claims including intentional infliction of emotional distress and based their Bane Act claim on the Fourth and Fifteenth Amendments of the Constitution and sections of the California Constitution, similar to Plaintiff here. The court noted that the complaint did not allege any threats, intimidation, or coercion and thus, found that their Bane Act claim failed. <u>Id.</u> Although the Bane Act claim was predicated on both state and federal law violations, District Judge Otis Wright, II explained: "there is no subject matter jurisdiction under the FTCA for Bane Act violations predicated on violations of the Fifth and Fourteenth Amendments." <u>Id.</u> at *8 n.5 (citing <u>Mendoza v. United States</u>, No. 15-cv-1528-JAH (BGS), 2017 WL 4286907, at *7 (S.D. Cal. Sept. 27, 2017)).

Similarly, in <u>Mendoza</u>, 2017 WL 4286907, at *7, the court determined "it lack[ed] subject matter jurisdiction over Plaintiff's Bane Act claim, as to Defendant USA, with respect to any alleged deprivation of a federal constitutional right." The Court reads <u>Mendoza</u> to stand for the proposition that a Bane Act claim must be grounded in state law when it is brought against the United States. As to "California law supplying a cognizable source of liability under <u>Myer</u>, the Court finds that Plaintiff does not allege, and cannot plausibly allege, that [defendants' conduct] constitute[s] an interference, or attempted interference, with Plaintiff's civil rights as defined in" the Bane Act. <u>Id.</u> Plaintiff attempts to distinguish <u>Mendoza</u>: "The court found the plaintiff's claim was premised solely on the federal Constitution, not the Bane Act, because the Bane Act requires an element of 'threats, intimidation, or coercion.'" (Opp. at 15 (citing <u>Mendoza</u>, 2017 WL 4286907, at *7).)

In her Complaint, Plaintiff premises violations of the Bane Act on federal constitutional violations, namely the Fourth Amendment and the Fifth Amendment, and California constitutional violations. (<u>See</u> Compl. ¶ 84.) With regard to the Bane Act claims premised on the Fourth and Fifth Amendment, the Court finds Plaintiff's claims fail and GRANTS the United States's Motion. Plaintiff cannot predicate a Bane Act claim against the United States on solely a constitutional violation because the United States has immunity and has not waived its immunity pursuant to the FTCA. <u>See</u> <u>Escamilla</u>, 2018 WL 1684307, at *8 n.5; <u>Mendoza</u>, 2017 WL 4286907, at *7.

To the extent Plaintiff's Bane Act claim is premised on interference with her rights under the California Constitution, Article I, Section 3, the Court finds Plaintiff has sufficiently stated a claim. Plaintiff argues in cases of intentional false arrest, a plaintiff is not required to allege coercion independent from that inherent in the seizure. (Opp. at 16.) The Court agrees, as discussed above. The Court now examines whether Plaintiff has alleged that Defendants acted with the specific intent. The Court notes that one ICE agent did not release Plaintiff after

another ICE agent told him/her that Plaintiff was a United States citizen.  (Compl. ¶ 40.)  Further, Plaintiff alleges ICE agents "arrested Ms. Plascencia solely on the basis of her national origin, place of birth, race, ethnicity, or language ability."  (Id. ¶ 52.)  Plaintiff also alleges ICE agents detained her without probable cause.  (Id. ¶¶ 31-41.)  The Court finds this sufficient to state a claim and allege the requisite intent.  See Watkins v. City of Oakland, No. 17-CV-06002-JCS, 2018 WL 574906, at *13 (N.D. Cal. Jan. 26, 2018) ("Watkins's allegations that Defendants knowingly falsified the only evidence suggesting that he had engaged in criminal conduct and arrested him without probable cause are sufficient at the pleading stage.")

As to Plaintiff's Bane Act claim premised on the California Constitution, Article I, Section 7 (equal protection), the Court also finds Plaintiff has sufficiently stated a claim.  She has alleged both threat and coercion:  Plaintiff alleges ICE agents threatened to deport her.  (Compl. ¶ 38.)  Further, Plaintiff alleges that ICE agents coerced her by detaining or seizing her.  (Id. ¶ 118.)  The former, based on speech, may be insufficient alone, but the Court finds the latter allegation to be adequate.  Accordingly, the Court DENIES the United States' Motion as to Plaintiff's Bane Act claim to the extent it is based on the California Constitution.

   **5. Other Grounds for Relief**

Plaintiff argues the United States has not contested her allegations that ICE committed false imprisonment when it intentionally caused Plaintiff's detention by the Sheriff's Department be prolonged without probable cause.  (Compl. ¶ 66; Opp. at 16.)  Plaintiff is correct in her assertion that the Motion only addresses the subsequent arrest and detention by ICE agents and not ICE's role in prolonging her detention by the Sheriff's Department.  In its Reply, the United States now challenges Plaintiff's claim based on ICE's alleged role in prolonging Plaintiff's detention.  (Reply at 12.)  However, the United States did not raise this argument in its Motion, and thus, the Court declines to consider it.  See City of Los Angeles v. San Pedro Boat Works, No. CV 02-7986 ABC (JWJX), 2004 WL 7325052, at *2 n.3 (C.D. Cal. Mar. 22, 2004) ("Because a movant may not raise new arguments in a reply brief, the Court declines to consider this argument").

Further, Plaintiff notes that the United States did not address Plaintiff's negligence claim based on ICE's maintenance, use, and reliance on databases known to be flawed and incomplete.  (Compl. ¶ 75; Opp. at 16-17.)  Again, in its Reply, the United States contests the viability of this claim.  (Reply at 11-12.)  However, the moment to challenge the sufficiency of the claim has passed.  Because the United States did not raise this argument in its Motion, and raises it anew in its Reply, the Court declines to consider it.

Lastly, in its Motion, the United States includes a footnote contesting the Bivens claim.  (Mot. at 11 n.4.)  However, the United States does not claim to represent the unnamed ICE agents.  In fact, the United States, in the same Motion, asserts: "No individual Doe ICE agent has been served, and none of the eight Doe ICE agents appear by way of this motion."  (Id. at 1 n.1.)  Thus, the Court does not reach the merits of the Bivens claim asserted against the ICE Does 1-8.

## V.   LEAVE TO AMEND

Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).  Here, the Court believes any amendment would be futile and DENIES leave to amend.

## VI.   CONCLUSION

For the foregoing reasons, the Court DENIES the United States's Motion as it is based on Rule 12(b)(1) of the Federal Rules of Civil Procedure and DENIES the Motion as to Plaintiff's claims for false arrest/false imprisonment, intentional/negligent infliction of emotional distress, negligence, and the Bane Act as premised on the California Constitution.  The Court GRANTS the United States's Motion as to Plaintiff's claim pursuant to the Bane Act only as it is predicated on the Fourth and Fifth Amendment of the United States Constitution.  Lastly, the Court DENIES the United States's Motion to File under Seal as MOOT.

**IT IS SO ORDERED.**