1  Douglas A. Axel (SBN 173814)
   daxel@sidley.com
2  Sean A. Commons (SBN 217603)
   scommons@sidley.com
3  James M. Perez (SBN 249842)
   james.perez@sidley.com
4  Alexandria Daugherty (SBN 307684)
   adaugherty@sidley.com
5  Alexandria Ruiz (SBN 313286)
   aruiz@sidley.com
6  Waqas Akmal (SBN 316601)
   wakmal@sidley.com
7  SIDLEY AUSTIN LLP
   555 West Fifth Street
8  Los Angeles, CA 90013
   Telephone: (213) 896-6178
9  Facsimile: (213) 896-6600

10 Jennifer Pasquarella (SBN 263241)
   jpasquarella@aclusocal.org
11 Adrienna Wong (SBN 282026)
   awong@aclusocal.org
12 Eva L. Bitran (SBN 302081)
   ebitran@aclusocal.org
13 ACLU FOUNDATION of
   SOUTHERN CALIFORNIA
14 225 W. Hospitality Ln., Ste. 302
   San Bernardino, CA 92408
15 Telephone: (909) 380-7505
   Facsimile:  (213) 977-5299
16
   Attorneys for Plaintiff
17 Guadalupe Robles Plascencia

18                UNITED STATES DISTRICT COURT

19                CENTRAL DISTRICT OF CALIFORNIA

20 | GUADALUPE ROBLES | Case No. 5:17-cv-02515 (JGB) SP
   | PLASCENCIA, |
21 | | **FIRST AMENDED COMPLAINT**
   |                  Plaintiff, |
22 | | <u>JURY TRIAL REQUESTED</u>
   |          v. |
23 | |
   | UNITED STATES OF AMERICA; |
24 | PHILLIP ASHLEY; DARRICK |
   | GATLING; AARON MARTINEZ; |
25 | AARON RAYNOR; TAMIRRA |
   | ROBINSON; ALBERTO ROMERO; |
26 | ABEL URIBE; WILLIAM |
   | WHEELER; SAN BERNARDINO |
27
28

---

COUNTY; SAN BERNARDINO
COUNTY SHERIFF'S
DEPARTMENT; MARCELYN
BROOKS; and MARLENE
ESCOBAR,

        Defendants.

1.    Plaintiff Guadalupe Robles Plascencia ("Ms. Plascencia") is a U.S. citizen of Mexican origin who naturalized over two decades ago.  She has been a resident of San Bernardino, California for approximately 38 years, where she raised two daughters and three sons and works as a hairstylist.  She is 60 years old.

2.    On March 29, 2017, Ms. Plascencia accompanied her daughter to the Ontario Police Department to collect property of theirs recovered from the scene of a car accident.  Instead of walking out with her things, however, Ms. Plascencia found herself under arrest.  To her shock and dismay, the San Bernardino County Sheriff's Department took her into custody and handed her over to Immigration and Customs Enforcement ("ICE") officers that arrested, handcuffed, and detained her—even though Ms. Plascencia repeatedly told both county and federal officers that she is an American citizen and offered to provide documents showing this to be true.

3.    Ms. Plascencia is far from the only U.S. citizen that ICE has wrongfully arrested and detained.  The key electronic databases that ICE agents and officers use to identify enforcement targets and discern citizenship and immigration status contain no electronicized records of naturalization from before 1994, and only spotty information from before 2008.  Nevertheless, ICE agents and officers rely on these databases, which they know to be incomplete and full of errors, to target people for arrest and detention.

4.    Although information about ICE's patterns and practices of wrongful arrests is published and well known, the San Bernardino County Sheriff's Department continues to provide ICE agents and officers with information about

individuals in the Sheriff's custody and to notify ICE when an individual the agency is interested in is ready to be released from County jail. The Sheriff's Department then provides ICE agents and officers access to its facilities, including the jail building and the secure parking lot—and, on information and belief, even delays the process of releasing people in its custody—to assist ICE in carrying out immigration arrests.

5.      Ms. Plascencia's unlawful arrest and detention were the result of this flawed immigration enforcement collaboration between the San Bernardino County Sheriff's Department and ICE. State and federal officials violated Ms. Plascencia's rights under the U.S. Constitution and state law by detaining her without probable cause to believe she was a noncitizen subject to removal from this country. To remedy her past injuries, Ms. Plascencia brings this action for damages under the Fourth and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983; the authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b); and California state law.

## THE PARTIES
### Plaintiff

6.      Ms. Plascencia is a resident of San Bernardino, California. A mother of five and grandmother of 16, Ms. Plascencia works to support her family. In 2013, she and her daughter opened a beauty salon near downtown San Bernardino.

7.      Although Ms. Plascencia speaks both English and Spanish, she is more comfortable speaking Spanish, which is her first language. She speaks English with an accent and does not read English well. She is Hispanic.

8.      Ms. Plascencia became a citizen of the United States on May 28, 1998, and was a lawful permanent resident before that. For almost 40 years, she has called California home.

FIRST AMENDED COMPLAINT

1

**<u>Defendants</u>**

2      9.     Defendant United States is a proper defendant in this action as to

3   Ms. Plascencia's claims made pursuant to the FTCA.  Immigration and Customs

4   Enforcement ("ICE"), a division of the Department of Homeland Security, was at all

5   relevant times a federal agency, organized and existing under the laws of the United

6   States.  On information and belief, the United States, through ICE, was at all

7   relevant times the employer of the individual ICE officers, formerly ICE Does 1-8

8   and hereinafter "ICE officers," that unlawfully arrested, detained, and violated the

9   rights of Ms. Plascencia.

10      10.    On information and belief, the ICE officers are individuals who by their

11   actions caused, prolonged, or exacerbated Ms. Plascencia's unlawful arrest and

12   detention and violations of her rights.  On information and belief, they are and were

13   at all relevant times agents, employees, officers or otherwise representatives of ICE.

14   At all times relevant to this Complaint, the ICE officers were acting within the

15   scope and course of their employment with ICE, an executive agency of the United

16   States.  Ms. Plascencia sues the ICE officers in their individual capacities.

17      11.    On information and belief, and based on meet and confers with counsel

18   for the United States and discovery disclosures by the United States, individual

19   Defendants Phillip Ashley, Darrick Gatling, Aaron Martinez, Aaron Raynor,

20   Tamirra Robinson, Alberto Romero, Abel Uribe, and William Wheeler are the ICE

21   officers, formerly ICE Does 1-8, that unlawfully arrested, detained, or otherwise

22   violated the rights of Ms. Plascencia.

23      12.    On information and belief, and based on meet and confers with counsel

24   for the United States and discovery disclosures by the United States, Defendant

25   Phillip Ashley is ICE Doe 1, who is and was at all relevant times, an employee of

26   ICE and involved in the unlawful arrest and detention of Ms. Plascencia, as well as

27   the violations of her rights.

28

FIRST AMENDED COMPLAINT

13.   On information and belief, and based on meet and confers with counsel for the United States and discovery disclosures by the United States, Defendant Aaron Martinez is ICE Doe 2, who is and was at all relevant times, an employee of ICE and involved in the unlawful arrest and detention of Ms. Plascencia, as well as the violations of her rights.

14.   On information and belief, and based on meet and confers with counsel for the United States and discovery disclosures by the United States, Defendant Darrick Gatling is ICE Doe 3, who is and was at all relevant times, an employee of ICE and involved in the unlawful arrest and detention of Ms. Plascencia, as well as the violations of her rights.

15.   On information and belief, and based on meet and confers with counsel for the United States and discovery disclosures by the United States, Defendant Aaron Raynor is ICE Doe 4, who is and was at all relevant times, an employee of ICE and involved in the unlawful arrest and detention of Ms. Plascencia, as well as the violations of her rights.

16.   On information and belief, and based on meet and confers with counsel for the United States and discovery disclosures by the United States, Defendant Tamirra Robinson is ICE Doe 5, who is and was at all relevant times, an employee of ICE and involved in the unlawful arrest and detention of Ms. Plascencia, as well as the violations of her rights.

17.   On information and belief, and based on meet and confers with counsel for the United States and discovery disclosures by the United States, Defendant Alberto Romero is ICE Doe 6, who is and was at all relevant times, an employee of ICE and involved in the unlawful arrest and detention of Ms. Plascencia, as well as the violations of her rights.

18.   On information and belief, and based on meet and confers with counsel for the United States and discovery disclosures by the United States, Defendant Abel Uribe is ICE Doe 7, who is and was at all relevant times, an employee of ICE

1   and involved in the unlawful arrest and detention of Ms. Plascencia, as well as the

2   violations of her rights.

3       19.   On information and belief, and based on meet and confers with counsel

4   for the United States and discovery disclosures by the United States, Defendant

5   William Wheeler is ICE Doe 8, who is and was at all relevant times, an employee of

6   ICE and involved in the unlawful arrest and detention of Ms. Plascencia, as well as

7   the violations of her rights.

8       20.   Defendant County of San Bernardino ("San Bernardino County";

9   "County") is a proper defendant in this action as to Ms. Plascencia's claims made

10   pursuant to the California Tort Claims Act, Cal Gov't Code §§ 810-996 (CTCA).

11   San Bernardino County is a political subdivision, organized under the laws of the

12   State of California.  The San Bernardino County Sheriff's Department is a

13   department of San Bernardino County.  The County is vicariously liable for the

14   tortious acts of its employees.  San Bernardino County, through its Sheriff's

15   Department, was at all relevant times the employer of the individual Sheriff's

16   Department officers, formerly California Does 1-10 and hereinafter "Sheriff's

17   Department officers," that unlawfully detained and violated the rights of

18   Ms. Plascencia.

19       21.   The Sheriff's Department was at all relevant times responsible for

20   ensuring that its officers act in accordance with the U.S. Constitution, the California

21   Constitution, and federal and state law.  Specifically, the Sheriff's Department was

22   at all relevant times responsible for formulating, implementing, changing,

23   approving, and/or allowing policies, customs, or practices applicable to its officers'

24   conduct with respect to the detention and release of individuals, and their dealings

25   and communications with immigration officials.  On information and belief, the

26   Sheriff's Department maintains a policy, custom, or practice of communicating

27   information about individuals in its custody to ICE, notifying ICE when identified

28   individuals are being released, and granting ICE access to its secure facilities to

enable ICE agents and officers to conduct arrests on the premises in order to transfer targeted individuals to federal immigration detention.

22.   On information and belief, and based on discovery disclosures by the County and Sheriff's Department, the Sheriff's Department officers are individuals who by their actions caused, prolonged, or exacerbated Ms. Plascencia's unlawful detention and violations of her rights.  They are and were at all relevant times, agents, employees, officers or otherwise representatives of San Bernardino County and its Sheriff's Department, in whose custody Ms. Plascencia was detained.

23.   On information and belief, and based on discovery disclosures by the County and Sheriff's Department, individual Defendants Marcelyn Brooks and Marlene Escobar are the Sheriff's Department officers that unlawfully detained, and violated the rights of Ms. Plascencia.

24.   On information and belief, and based on discovery disclosures by the County and Sheriff's Department, Defendant Marcelyn Brooks is California Doe 1, who is and was at all relevant times, an officer employed by the Sheriff's Department and involved in the unlawful detention of Ms. Plascencia, as well as the violations of her rights.

25.   On information and belief, and based on discovery disclosures by the County and Sheriff's Department, Defendant Marlene Escobar is California Doe 2, who is and was at all relevant times, an officer employed by the Sheriff's Department and involved in the unlawful detention of Ms. Plascencia, as well as the violations of her rights.

## **JURISDICTION AND VENUE**

26.   The Court has subject matter jurisdiction over Ms. Plascencia's claims under the U.S. Constitution, 42 U.S.C. § 1983, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights).  The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

27.    On May 24, 2017, Ms. Plascencia timely filed an administrative complaint with the federal government.  Ms. Plascencia is authorized to file her FTCA claims in this District Court because her administrative tort claim has not been resolved six months following filing.  Accordingly, Ms. Plascencia's claims are deemed denied, and she has exhausted all available administrative remedies. *See* 28 U.S.C. §§ 2675, 1346.

28.    On May 24, 2017, Ms. Plascencia timely filed an administrative tort claim with San Bernardino County.  The County issued a notice rejecting her claims on June 27, 2017.  She has exhausted all available administrative remedies.  *See* Cal. Gov't. Code §§ 913, 945.6(a)(1).

29.    Venue is proper in this District under 28 U.S.C. § 1402(b) because the acts at issue in this lawsuit occurred within the District.

## STATEMENT OF FACTS

### Ms. Plascencia's Arrest

30.    On or about March 29, 2017, at approximately 4:00 p.m., Ms. Plascencia walked into the Ontario Police Department to collect her legally obtained firearm that had been recovered from her vehicle following a motor vehicle accident.

31.    Upon her arrival, Ms. Plascencia produced her lawfully issued and valid California driver's license and gun registration to police officers to reclaim the firearm.  The officers asked Ms. Plascencia to wait in a small room, ostensibly for the purpose of locating and returning her property.

32.    Instead of returning with her property, however, two police officers arrived and informed Ms. Plascencia that she was being arrested based on a 10-year-old warrant.

33.    The officers could not explain to Ms. Plascencia the legal basis for issuance of the warrant, other than by describing the warrant as related to

"disobeying a court order."  They never gave a clear answer to Ms. Plascencia's repeated questions as to the basis of the warrant.

34.   Ms. Plascencia was never read her *Miranda* rights or provided with a writing summarizing her *Miranda* rights.

35.   The officers placed Ms. Plascencia in a cell.  After approximately seven hours, they took her fingerprints, then placed her back in the cell.

## Ms. Plascencia's Transfer to the West Valley Detention Center

36.   After an indeterminate amount of time, officers handcuffed Ms. Plascencia, chained her around the waist, and placed her in a transport truck. Officers drove her to the West Valley Detention Center, a San Bernardino County jail located at 9500 Etiwanda Ave., Rancho Cucamonga, California 91739.

37.   On information and belief, and based on discovery disclosures by the County and Sheriff's Department, after holding Ms. Plascencia in a cell for approximately three hours, Ms. Plascencia was directed to sign a document informing the Mexican consulate of her arrest.  Even though she should not have had to do so because the Sheriff's Department already had her driver's license, gun registration, and other paperwork, Ms. Plascencia explained and insisted that she was a U.S. citizen and could prove it if given the opportunity to produce her passport.  Ms. Plascencia was told the form would help her get an attorney, so she signed the consular notification.

38.   Ms. Plascencia spent the night in a cell in the West Valley Detention Center.

## Ms. Plascencia's Detention Was Extended Without Explanation

39.   Early the following afternoon, before 2:00 p.m., Ms. Plascencia was escorted to a small desk where she was asked to sign a document notifying ICE that she was being released.  The document was entirely in English.  Ms. Plascencia asked why ICE was being notified of her release since she was a U.S. citizen. Ms. Plascencia was told that she would not be released unless she signed the ICE

notification form.  As a result, Ms. Plascencia signed the notification form.  Her driver's license, gun registration, and other paperwork related to her arrest were then returned to her.

40.   Although Ms. Plascencia was told that she would be released upon signing the ICE notification form, she was not actually permitted to leave the West Valley Detention Center.  Instead, Ms. Plascencia was told to go into a small cell across from the desk where she had received her paperwork and instructed to wait there for further instruction.  Though the cell door remained open, it was clear to Ms. Plascencia that she was not permitted to walk out of the room.  She was directed to wait in the cell as a ruse to delay her departure from the West Valley Detention Center until ICE arrived.  This conduct was willful and intentional, made knowing there was no legal basis to do so.

41.   After being detained for an additional 10 to 15 minutes in the small cell, Ms. Plascencia was told she was free to leave the building.  It was not explained to her why she had been detained in this manner.

42.   On information and belief, the Sheriff's Department officers prolonged Ms. Plascencia's detention because ICE officers communicated an intention to take Ms. Plascencia into custody.  The Sheriff's Department officers stalled Ms. Plascencia's release in order to afford ICE officers additional time to arrive at the West Valley Detention Center and effect Ms. Plascencia's arrest.  The San Bernardino County Sheriff's Department maintains an unlawful policy, custom, or practice of delaying the release of people in their custody whom they no longer have a legal basis to detain, including by unreasonably extending the administrative processes associated with their release from County custody, in order to aid and abet ICE arrests.  The Sheriff's Department officers who prolonged Ms. Plascencia's detention acted in accordance with this policy, custom, or practice.

1

## ICE Arrested Ms. Plascencia Without Probable Cause

2

43.   As Ms. Plascencia walked towards the exit of West Valley Detention

3

Center, two men approached her near the entrance and stopped her.  They identified

4

themselves to Ms. Plascencia as ICE officers and immediately arrested her.

5

44.   Ms. Plascencia explained to the ICE officers that she was a U.S. citizen.

6

Despite the fact that she had a validly issued California driver's license and gun

7

registration, the officers laughed at her and said that, if she were a U.S. citizen, she

8

would have paperwork on her person to prove it.

9

45.   Ms. Plascencia, however, confirmed that she could provide additional

10

paperwork to prove her U.S. citizenship—namely her passport—if given the chance.

11

The ICE officers disregarded Ms. Plascencia's pleas for an opportunity to establish

12

her U.S. citizenship.  Instead, they took her to an unmarked vehicle in the jail's

13

secure parking lot.  Two additional ICE agents were waiting for Ms. Plascencia

14

inside the vehicle.

15

46.   On information and belief, the San Bernardino County Sheriff's

16

Department had permitted the ICE officers to park their vehicle in the secure

17

parking lot of the West Valley Detention Center for the purpose of facilitating

18

Ms. Plascencia's unlawful arrest.

19

47.   Ms. Plascencia was handcuffed before being placed in the back of the

20

unmarked vehicle.  Without any explanation whatsoever, the ICE officers held

21

Ms. Plascencia in the vehicle—still in the secure parking lot of the West Valley

22

Detention Center—for approximately 30 minutes before they informed her that they

23

were taking her to ICE's San Bernardino Field Station.

24

48.   The ICE officers transported Ms. Plascencia from the West Valley

25

Detention Center to the ICE Field Station.  Still handcuffed, the ICE officers

26

escorted Ms. Plascencia inside the field station and instructed her to wait.  The ICE

27

officers never removed Ms. Plascencia's handcuffs during this time.  The arresting

28

ICE officers then left the facility.

49.     Another ICE officer approached Ms. Plascencia and told her to identify herself.  Ms. Plascencia gave her name.  The officer laughed and said, "Here, you are nobody, you're nothing."  Ms. Plascencia asked the officer why they were arresting and detaining her, but the ICE officer refused to provide an explanation.

50.     After some time, an officer removed Ms. Plascencia's handcuffs.  A second ICE officer asked Ms. Plascencia for her lawfully issued California driver's license, which she provided.  She again told the officer that she was a U.S. citizen and that her daughter had her passport.  The requesting officer said that he could review data accessible through a computer and determine her citizenship status, but he mockingly stated that he knew the system would prove that Ms. Plascencia was lying.  During this time, in callous disregard of Ms. Plascencia and her rights, the ICE officers repeatedly accused Ms. Plascencia of identity theft, saying that she was using a false name and documentation, and threatened her with deportation.

51.     Ms. Plascencia made several requests to make a call, which were denied.  A short time later, an ICE officer called Ms. Plascencia's daughter to inform her that she was being detained at the ICE San Bernardino field station.  Ms. Plascencia was permitted to speak with her daughter, and she asked her daughter to bring her passport to the station as soon as possible.

52.     When Ms. Plascencia's daughter arrived at the field station, the ICE officer who had been speaking with Ms. Plascencia collected the passport and appeared to review it.  He input information into a computer.  Another ICE officer also collected the gun registration that Ms. Plascencia had with her at the time of her arrest and detention and showed it to the first officer, who was sitting at the computer.  Upon reviewing the gun registration, the second officer said aloud to the first officer that Ms. Plascencia needed to be released because she was a U.S. citizen.  In callous disregard for Ms. Plascencia and her rights, and using expletives, the officer sitting at the computer said, "No," and that she had to wait.

53.   The ICE officer sitting at the computer then asked Ms. Plascencia a series of questions about her family and her travels in the recent months.  After Ms. Plascencia answered those questions, the ICE officer finally said that because she answered almost everything correctly, he could release her from custody.  He removed the handcuffs and escorted her to the back door of the facility.  He did not apologize for her prolonged detention.

## ICE's Reliance on Electronic Databases

54.   On information and belief, ICE conducted database searches for information about Ms. Plascencia, including but not limited to the Central Index System (CIS) of U.S. Citizenship and Immigration Services (USCIS).  On information and belief, the results of these database searches produced no information about Ms. Plascencia's citizenship and status.

55.   CIS is a database maintained by USCIS, the agency responsible for processing petitions, applications, and other requests for immigration benefits.  According to DHS, "CIS serves as a DHS-wide index used to track the location of case files, to include Alien Files (A-File) nationally and to maintain alien status and repository information.  CIS contains information on the status of individuals, including lawful permanent residents, naturalized citizens, U.S. border crossers, apprehended aliens, legalized aliens, aliens who have been issued employment authorizations, and other individuals of interest to DHS.  CIS provides information used for granting or denying benefits and capturing subsequent status changes; documenting chain of custody for enforcement; keeping track of immigrant statistics; and control and account of record keeping services in accordance with the Code of Federal Regulations (CFR) to certify the existence or non-existence of records."

56.   CIS is not a complete repository of information about all citizens and noncitizens in the United States, nor does it provide a complete account of whether individuals are subject to removal.

57.   Even concerning information that it purports to maintain, the CIS database is incomplete.  On information and belief, DHS only began to digitize applicants' fingerprints (and to input the associated records electronically) in 1994. USCIS only began to consistently digitize the fingerprints of those who apply for immigration benefits in 2008.  Therefore, naturalization and citizenship applications created prior to 2008 are not consistently available in the CIS database; those created prior to 1994 are not available at all.

58.   On information and belief, the CIS database is replete with errors:  these include outdated information, misspelling of names, and erroneous immigration status information, among other problems.  The DHS Office of the Inspector General and the Government Accountability Office have reported on these errors, and they are well known throughout DHS.  These errors in these databases have given rise to litigation.  *See, e.g.*, *Gonzalez v. ICE*, No. 2:13-cv-04416 (C.D. Cal.).

59.   ICE has acknowledged in the context of immigration detainers that it does not have probable cause when it initiates arrests based on evidence of foreign birth and no match in these databases.

60.   On information and belief, ICE and its agents and officers are aware of the incomplete and inaccurate nature of these databases, but nonetheless relies on them for arrest determinations.

61.   On information and belief, the San Bernardino County Sheriff's Department and its officers are aware of the incomplete and inaccurate nature of these databases.

62.   On information and belief, this practice contributes to ICE unlawfully arresting U.S. citizens without authority and without probable cause.[1]

---

[1] *See* Joel Rubin and Paige St. John, "How a U.S. citizen was mistakenly targeted for deportation. He's not alone," *L.A. Times* (Nov. 29, 2017), http://www.latimes.com/local/lanow/la-me-ice-citizen-arrest-20171129-story.html.

FIRST AMENDED COMPLAINT

63.   On information and belief, the ICE officers arrested Ms. Plascencia on the basis of evidence of her birth in Mexico and the *absence* of any information in the CIS database or any other immigration database.

64.   On information and belief, without any probable cause to believe she was a noncitizen subject to removal, the ICE officers arrested Ms. Plascencia solely on the basis of her national origin, place of birth, race, ethnicity, or language ability.

**The San Bernardino County Sheriff's Department's Collaboration with ICE**

65.   The San Bernardino County Sheriff's Department has a long-standing collaborative relationship with ICE.

66.   The San Bernardino County Sheriff's Department receives immigration detainers from ICE.  An immigration detainer is a fill-in-the-blank form completed by an ICE officer that requests a law enforcement agency to maintain custody of an individual for up to 48 hours beyond the time the individual becomes due for release from custody so that ICE may take custody of the person for purposes of civil immigration enforcement.  In the civil immigration context, ICE does not obtain a warrant signed by a judge when it issues detainers or anytime thereafter, nor does it provide a judicial warrant to the receiving law enforcement agency.  In addition, ICE does not make an individualized determination of probable cause prior to issuing a detainer.

67.   The San Bernardino County Sheriff's Department's policy is not to hold inmates for up to 48 hours beyond the time they are eligible for release on an immigration detainer.  Instead, on information and belief, the Department's policy is to treat a detainer as a request for notification of a person's release date.  To that end, the Department's policy is to notify ICE of the release dates of every person in its custody who receives a detainer.

68.   On information and belief, the San Bernardino County Sheriff's Department maintains a policy, custom, or practice of notifying ICE of an

individual's release and detaining those individuals beyond the time they would otherwise be released to facilitate ICE's arrival to the jail and arrest.

69.    On information and belief, based on discovery disclosures by the United States, the San Bernardino County Sheriff's Department commonly permits ICE access to its facilities, including the secure parking lot, to effectuate the arrests of individuals.

70.    On information and belief, these policies, customs, or practices have led the San Bernardino County Sheriff's Department to unlawfully extend the detention of several individuals in addition to Ms. Plascencia, in order for ICE to effectuate their arrests.

71.    On information and belief, these policies, customs, or practices foreseeably do and in Ms. Plascencia's case did result in the Sheriff's Department detaining individuals beyond the time they would otherwise be released from custody and without probable cause for a new arrest.

## Ms. Plascencia Suffered Financially and Continues to Suffer from Mental and Emotional Pain as a Result of her Unlawful and Arbitrary Arrest and Detention

72.    As a direct result of the events that form the basis of this lawsuit, Ms. Plascencia's demeanor has changed:  she is fearful, and every time she sees a police officer drive by she feels profound anxiety and physical unease.  This anxiety, and its attendant physical symptoms, have on several occasions prevented Ms. Plascencia from opening her shop for the day.  Ms. Plascencia is afraid to travel to Mexico, and indeed she has not left the country since her arrest, because she worries that immigration authorities will not let her back in.

73.    Ms. Plascencia has suffered and continues to suffer from serious emotional distress, pain, suffering, trauma, worry, anxiety, humiliation, and embarrassment, as well as physical symptoms, such as headaches, nausea, loss of

1  sleep, fatigue, and anxiety attacks.  Ms. Plascencia has sought treatment from

2  professional therapists.

3      74.  Ms. Plascencia also experienced loss of income due to loss of

4  employment during her detention and subsequent period of recovery from this

5  traumatic experience.

6  **PRAYER FOR RELIEF**

7  **COUNT I**

8  **Federal Tort Claims Act**

9  **False Arrest/False Imprisonment**

10  **(Against Defendant United States)**

11      75.  The foregoing allegations are realleged and incorporated herein.

12      76.  Defendant United States, through the ICE officers, inflicted personal

13  injury on Ms. Plascencia by subjecting her to false arrest and imprisonment.

14      77.  There was no lawful justification for Ms. Plascencia's arrest.  The ICE

15  officers did not have probable cause to believe she was a noncitizen subject to

16  removal from the United States.  Upon information and belief, Ms. Plascencia was

17  arrested on the impermissible basis of race, ethnicity, language ability, and/or

18  national origin.

19      78.  Further, on information and belief, the ICE officers intentionally caused

20  Ms. Plascencia's detention by the San Bernardino County Sheriff's Department to

21  be prolonged, without probable cause to believe she was removable, in the face of

22  substantial evidence that Ms. Plascencia is a U.S. citizen, in reliance on faulty

23  databases; purportedly based on an unsigned detainer in someone else's name;

24  and/or due to failure to access readily available information.[2]  This detention was

25  without legal justification or probable cause.

26  ---

[2] ICE's own internal policies regarding the investigation of potential U.S. Citizenship requires agents to check "all available DHS data systems *and any other reasonable means available to the officer*."  Memorandum on Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE, No. 16001.2, § 5.1(1) (Nov. 10, 2015), available at: https://www.ice.gov/sites/default/files/documents/Document/2017/16001.2.pdf (emphasis added).

79.   Ms. Plascencia did not freely and voluntarily consent to her imprisonment.

80.   The ICE officers' conduct proximately caused Ms. Plascencia actual harm: this unlawful arrest resulted in Ms. Plascencia's loss of liberty, lost wages, and other personal injuries as set forth above.

81.   The ICE officers were, at all times relevant, officers and/or employees of ICE and, as such, acting as employees of Defendant United States.

**COUNT II**

**Federal Tort Claims Act**

**Negligence**

**(Against Defendant United States)**

82.   The foregoing allegations are realleged and incorporated herein.

83.   ICE officials have a duty to act with reasonable care and to not subject individuals to personal injury during the course of their duties.

84.   ICE officials have a duty to not subject individuals to discriminatory treatment on the basis of actual or perceived race, ethnicity, and/or national origin.

85.   ICE officials have a duty to not subject individuals to unreasonable searches or seizures.

86.   Defendant United States, through ICE, and the ICE officers breached one or more of these duties.

87.   As set forth above, ICE officials routinely rely on databases that they know and admit to be incomplete to authorize and justify the issuance of detainers and arrests.  This causes harm to individuals like Ms. Plascencia (including other naturalized citizens) by depriving them of their liberty without probable cause to believe they are removable.  On information and belief, the ICE officers' negligent reliance solely on databases known to be flawed and Ms. Plascencia's actual or perceived race, ethnicity, or national origin caused Ms. Plascencia's unlawful detention and resulting injuries.

88.  As set forth above, the ICE officers who caused Ms. Plascencia's detention by San Bernardino County Sheriff's Department officers to be prolonged, and who arrested her at the West Valley Detention Center, did so in reliance on ICE's faulty databases, in spite of her assertion of U.S. citizenship and abundant legitimate countervailing evidence of U.S. citizenship that Ms. Plascencia offered the officers, which could have been verified through readily available information. On information and belief, the ICE officers' lack of probable cause or reasonable care caused Ms. Plascencia's unlawful detention and resulting injuries.

89.  The ICE officers were, at all times relevant, officers and/or employees of ICE and, as such, acting as employees of Defendant United States.

## COUNT III

### Federal Tort Claims Act

### Intentional Infliction of Emotional Distress or in the Alternative

### Negligent Infliction of Emotional Distress

### (Against Defendant United States)

90.  The foregoing allegations are realleged and incorporated herein.

91.  Despite Ms. Plascencia's constant assertions and offers of proof that she is a U.S. citizen, Defendant United States, through the ICE officers, intentionally took her into federal custody without probable cause.  They also unnecessarily delayed the processing of her information and release.  ICE officers denigrated, threatened, and insulted Ms. Plascencia as she objected to her treatment, denying her humanity by saying she was "nothing" and "nobody" and threatening to deport her to Mexico without cause.

92.  These actions, carried out by agents in a relation or position of power with respect to Ms. Plascencia, were outrageous.

93.  Defendant United States, through the ICE officers, intended to cause or negligently caused Ms. Plascencia emotional distress.  Defendant's conduct was designed to cause and naturally caused severe emotional distress, including pain,

suffering, trauma, worry, anxiety, humiliation, and embarrassment.  Ms. Plascencia has had and continues to have physical and emotional symptoms such as headaches, nausea, loss of sleep, fatigue, and anxiety attacks for more than 10 months.

94.   The ICE officers were, at all times relevant, officers and/or employees of ICE and, as such, acting as employees of Defendant United States.

## COUNT IV

### Federal Tort Claims Act

### The Bane Act (Cal. Civ. Code § 52.1(a))

### (Against Defendant United States)

95.   The foregoing allegations are realleged and incorporated herein.

96.   Defendant United States, through the ICE officers, intentionally caused Ms. Plascencia to be detained and detained her without probable cause to believe she was removable, solely on the basis of her race, ethnicity, and/or national origin, and despite her consistent assertions that she is a U.S. citizen.  This unlawful detention was accomplished through coercion, *i.e.*, through Ms. Plascencia's forced continuing incarceration.  Therefore, Defendant United States, through the ICE officers, violated Ms. Plascencia's rights under California Civil Code § 52.1 and the following clearly established rights under law, including but not limited to:

    a.   The right to be secure from unreasonable searches and seizures, as secured by  the California Constitution, Article 1, Section 13; and

    b.   The right to equal protection under law, regardless of perceived or actual race, ethnicity, or country of origin, as secured by the California Constitution, Article 1, Section 7.

97.   As a direct and proximate result of Defendants' acts as set forth above, Ms. Plascencia sustained injuries and damages.

98.   The ICE officers were, at all times relevant, officers and/or employees of ICE and, as such, acting as employees of Defendant United States.

19

FIRST AMENDED COMPLAINT

# COUNT V

## Fourth Amendment (*Bivens*)

## Unreasonable Seizure

## (Against Individual Defendants the ICE officers)

99.   The foregoing allegations are realleged and incorporated herein.

100.  The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures."

101.  As set forth above, the ICE officers seized and detained Ms. Plascencia without probable cause to believe Ms. Plascencia was a noncitizen subject to removal and detention.

102.  The detention constituted an unreasonable seizure in violation of Ms. Plascencia's Fourth Amendment rights.

103.  As of March 30, 2017, it was clearly established that an ICE officer must have probable cause to arrest an individual suspected of being a removable noncitizen.  It was also clearly established that ICE does not have probable cause to arrest and detain a U.S. citizen or to make an arrest based on foreign place of birth and the absence of records in databases, which it knows to be incorrect and incomplete.

104.  Even if the ICE officers had probable cause for the arrest, which they did not, probable cause ceased to exist the moment Ms. Plascencia informed the ICE officers that she is a U.S. citizen—a fact she asserted upon arrest.

105.  The ICE officers' conduct proximately caused Ms. Plascencia harm, including loss of liberty, lost wages, and other personal injuries as set forth above.

106.  In performing the acts alleged herein, the ICE officers acted maliciously, intentionally, recklessly, and/or with callous indifference to Ms. Plascencia's constitutional rights, such that an award of punitive damages is appropriate.

# COUNT VI

## California Tort Claims Act (Cal. Gov't Code §§ 815.2, 820)
## False Arrest/False Imprisonment

**(Against Defendants San Bernardino County, San Bernardino County Sheriff's Department, and the Individual Sheriff's Department Officers)**

107.  The foregoing allegations are realleged and incorporated herein.

108.  The Sheriff's Department officers intentionally caused Ms. Plascencia to be imprisoned without probable cause, all in the face of substantial credible evidence that Ms. Plascencia is a U.S. citizen.  There was no lawful justification for Ms. Plascencia's detention after County agents at the West Valley Detention Center purportedly released her.  Nevertheless, as set forth above, the Sheriff's Department officers failed to promptly release Ms. Plascencia, instead asking her to wait in the Detention Center.

109.  On information and belief, the Sheriff's Department officers intentionally caused Ms. Plascencia to be imprisoned because they knowingly gave ICE false and/or materially incomplete information regarding Ms. Plascencia's citizenship status.  Such information could be expected to stimulate an arrest.

110.  On information and belief, the Sheriff's Department officers intentionally caused Ms. Plascencia to be imprisoned because they authorized, encouraged, directed, or assisted ICE officers by allowing ICE officers to use the West Valley facility secure parking lot to unlawfully detain Ms. Plascencia.

111.  On information and belief, Defendants County, Sheriff's Department and the Sheriff's Department officers also intentionally caused Ms. Plascencia to be imprisoned because they intentionally, recklessly, and/or negligently established and/or enforced policies and practices that caused Ms. Plascencia to be unlawfully and tortiously detained.  Specifically, as set forth above, these Defendants adopted a policy of notifying ICE agents and officers when individuals with immigration detainers are in County custody, detaining such individuals pending ICE's arrival,

and allowing ICE access to its facilities (including the secure parking lot) to effect their arrest, despite knowing that ICE detainers are often unsupported by probable cause, an action which would and did foreseeably result in the prolonged unlawful, nonconsensual detention of Ms. Plascencia and others like her.  They also failed to establish and/or enforce policies and practices that would have prevented Ms. Plascencia's unlawful and tortious detention.

112.  At all times, Ms. Plascencia was aware of her confinement and did not consent to it.

113.  Ms. Plascencia was actually harmed: this unlawful arrest resulted in Ms. Plascencia's loss of liberty, lost wages, and other personal injuries as set forth above.

114.  The Sheriff's Department officers were, at all times relevant, officers and/or employees of San Bernardino County and its Sheriff's Department and, as such, acting within the scope of their employment.  Under the CTCA, Defendants County, Sheriff's Department, and the Sheriff's Department officers are liable for these actions.

## COUNT VII
### California Tort Claims Act (Cal Gov't Code §§ 815.2, 820)
### Negligence
### (Against Defendants San Bernardino County, San Bernardino County Sheriff's Department, and the Individual Sheriff's Department Officers)

115.  The foregoing allegations are realleged and incorporated herein.

116.  Defendants County, Sheriff's Department, and the Sheriff's Department officers have a duty to act with reasonable care and not subject individuals to personal injury during the course of their duties.

117.  Defendants have a duty not to subject individuals to discriminatory treatment on the basis of race, ethnicity, and/or national origin, or to unreasonable searches and seizures.

118. Defendants have a mandatory duty under law to release an individual if there is no probable cause to detain her, including if any action or warrant against her has been dismissed.

119. Defendants have a duty not to maintain policies, customs, or practices whose natural and foreseeable consequence is a violation of individuals' rights and liberties secured by the U.S. Constitution.

120. As set forth above, Defendant the Sheriff's Department officers breached these duties by unlawfully extending Ms. Plascencia's detention for the purpose of allowing ICE an opportunity to unlawfully arrest her. The breach was a proximate cause of Ms. Plascencia's unlawful detention and resulting injuries.

121. As set forth above, on information and belief, Defendants County, Sheriff's Department, and the Sheriff's Department officers breached these duties by negligently adopting and implementing a policy of notifying ICE agents and officers when individuals with immigration detainers are in County custody, delaying the process of release for such individuals pending ICE's arrival, and allowing ICE access to its facilities (including the secure parking lot) to effect their arrest, despite knowing that ICE detainers are often unsupported by probable cause, an action which would and did foreseeably result in the prolonged unlawful detention of Ms. Plascencia and others like her.

122. The Sheriff's Department Officers were, at all times relevant, officers and/or employees of San Bernardino County and its Sheriff's Department and, as such, acting within the scope of their employment. Under the CTCA, Defendants County, Sheriff's Department, and California Does 1-10 are liable for these actions.

/ / /

/ / /

/ / /

# COUNT VIII

## California Tort Claims Act (Cal. Gov't Code §§ 815.2, 820)

## Intentional Infliction of Emotional Distress or in the Alternative

## Negligent Infliction of Emotional Distress

## (Against Defendants San Bernardino County, San Bernardino County Sheriff's Department and the Individual Sheriff's Department Officers)

123. The foregoing allegations are realleged and incorporated herein.

124. On information and belief, the Sheriff's Department officers intentionally or negligently inflicted Ms. Plascencia with emotional distress by unnecessarily delaying the processing of her information and release from West Valley Detention Center, which allowed ICE to unlawfully detain her—despite the fact that there was no reason to believe that Ms. Plascencia could have been the lawful subject of an ICE detainer, and the Sheriff's Department officers knew or should have known that on March 30, 2017. These Defendants also forced Ms. Plascencia to sign a notification to ICE, threatening her with prolonged detention if she declined, even though she consistently asserted that she is a U.S. citizen.

125. These actions, carried out by agents in a relation or position of power with respect to Ms. Plascencia, were outrageous.

126. As a result of this conduct, Ms. Plascencia has suffered severe emotional distress over a prolonged period of time, including fright, grief, pain, suffering, trauma, worry, anxiety, humiliation, and embarrassment. Ms. Plascencia also has physical symptoms such as headaches, nausea, loss of sleep, fatigue, and anxiety attacks.

127. Ms. Plascencia's emotional distress was the natural consequence of the actions of the Sheriff's Department officers.

128. The Sheriff's Department officers were, at all times relevant, officers and/or employees of San Bernardino County and its Sheriff's Department and, as

such, acting within the scope of their employment.  Under the CTCA, Defendants
County, Sheriff's Department, and the Sheriff's Department officers are liable for
these actions.

**COUNT IX**

**The Bane Act (Cal. Civ. Code § 52.1)**

**(Against Defendants San Bernardino County, San Bernardino County Sheriff's
Department and the Individual Sheriff's Department Officers)**

129.  The foregoing allegations are realleged and incorporated herein.

130.  The Sheriff's Department officers unlawfully extended Ms. Plascencia's
detention until the arrival of ICE officers, solely on the basis of her race, ethnicity,
and/or national origin and despite her consistent assertions that she is a U.S. citizen.
This unlawful detention was accomplished through coercion, *i.e.*, through
Ms. Plascencia's forced continuing incarceration.  Therefore, Defendants California
Does 1-10 violated Ms. Plascencia's rights under California Civil Code § 52.1 and
the following clearly established rights under law, including but not limited to:

    a.    The right to be secure from unreasonable searches and seizures,
as secured by the Fourth Amendment to the U.S. Constitution and
the California Constitution, Article 1, Section 13; and

    b.    The right to equal protection under law, regardless of perceived or
actual race, ethnicity, or country of origin, as secured by the
Fourteenth Amendment to the U.S. Constitution and the
California Constitution, Article 1, Section 7.

131.  As a direct and proximate result of Defendants' acts and/or omissions as
set for above, Ms. Plascencia sustained injuries and damages.

132.  In performing the acts alleged herein, the Sheriff's Department officers
acted maliciously, intentionally, recklessly, and/or with callous indifference to
Ms. Plascencia's constitutional rights, such that an award of punitive damages is
appropriate.

133. The Sheriff's Department officers were, at all times relevant, officers and/or employees of San Bernardino County and its Sheriff's Department and, as such, acting within the scope of their employment. Under the CTCA, Defendants County, Sheriff's Department, and the Sheriff's Department officers are liable for these actions.

## COUNT X

### Fourth and Fourteenth Amendment (42 U.S.C. § 1983)

### Unreasonable Seizure

### (Against Defendants the Individual Sheriff's Department Officers)

134. The foregoing allegations are realleged and incorporated herein.

135. The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures." The Fourth Amendment's guarantees are applied to the States through the Fourteenth Amendment.

136. The Sheriff's Department officers caused Ms. Plascencia to be detained at West Valley Detention Center after she was entitled to release and after their authority to detain her had ceased.

137. The Sheriff's Department officers did not have probable cause to believe that Ms. Plascencia was a noncitizen subject to removal and detention.

138. Despite Ms. Plascencia's repeated claims that she was a U.S. citizen and her willingness to demonstrate evidence of her citizenship, Defendant the Sheriff's Department officers refused to investigate her claims; instead, they forced Ms. Plascencia to sign an ICE notification form under threat that she would not be released until she signed.

139. With knowledge that detaining Ms. Plascencia without probable cause was a Fourth Amendment violation, the Sheriff's Department officers nonetheless continued to detain Ms. Plascencia, including placing her in a cell after telling her she was ready to be released.

140.  As of March 30, 2017, it was clearly established that a police officer must have probable cause to arrest an individual suspected of being a removable noncitizen.  It was also clearly established that ICE does not have probable cause to arrest and detain a U.S. citizen.  It was also clearly established that neither ICE nor a police officer has probable cause to make an arrest based on foreign place of birth and the absence of records in its databases, which it knows to be incorrect and incomplete.

141.  The Sheriff's Department officers effected an unreasonable seizure and deprivation of liberty in violation of Ms. Plascencia's Fourth and Fourteenth Amendment rights.

142.  In performing the acts alleged herein, the Sheriff's Department officers acted maliciously, intentionally, recklessly, and/or with callous indifference to Ms. Plascencia's constitutional rights, such that an award of punitive damages is appropriate.

## COUNT XI

### Fourteenth Amendment (42 U.S.C. § 1983)

### Equal Protection

### (Against Defendants the Individual Sheriff's Department Officers)

143.  The foregoing allegations are realleged and incorporated herein.

144.  The Fourteenth Amendment to the U.S. Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

145.  On information and belief, by causing Ms. Plascencia's information to be reported to ICE solely on the basis of her place of birth, Hispanic name, Hispanic appearance, and/or English-language ability, the Sheriff's Department officers subjected Ms. Plascencia to adverse treatment (namely, reporting to ICE and consequent detention) based on her race, ethnicity, and/or national origin, in violation of her right to equal protection under the Fourteenth Amendment.

146.  The Sheriff's Department officers disregarded Ms. Plascencia's statements that she was a U.S. citizen, and refused to consider her proof of her citizenship, on the basis of her race, ethnicity, and/or national origin.  They treated Ms. Plascencia as presumptively subject to detention and removal as an allegedly deportable noncitizen on the basis of her Hispanic identity.

147.  On March 30, 2017, it was clearly established that it is unconstitutional to detain an individual on the basis of her race, ethnicity, and/or national origin.

148.  In performing the acts alleged herein, the Sheriff's Department officers acted maliciously, intentionally, recklessly, and/or with callous indifference to Ms. Plascencia's constitutional rights, such that an award of punitive damages is appropriate.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that this Court:

a.      Award compensatory and punitive damages against all individual Defendants in their individual capacities for the above violations of federal and state law;

b.      Award compensatory damages against the United States under the FTCA;

c.      Award prejudgment interest on any award of damages to the extent permitted by law;

/ / /

/ / /

/ / /

1      d.      Award reasonable attorneys' fees and costs, pursuant to 42 U.S.C.

2              § 1988 and any other applicable law; and

3      e.      Grant such other relief as the Court may deem appropriate.

4                          **<u>JURY TRIAL REQUESTED</u>**

5

6  Date:  August 16, 2018                    SIDLEY AUSTIN LLP

7

8                                            By:  */s/ Waqas Akmal*
                                                  Waqas Akmal
9                                                 SIDLEY AUSTIN LLP

10                                           ACLU FOUNDATION of
                                             SOUTHERN CALIFORNIA
11

12                                           By:  */s/ Eva L. Bitran*
                                                  Eva L. Bitran
13

14                                           Attorneys for Plaintiff
                                             Guadalupe Robles Plascencia
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2    STATE OF CALIFORNIA  )
            ) SS

3    COUNTY OF LOS ANGELES )

4   I am employed in the County of Los Angeles, State of California.  I am over the

5    age of 18 years and not a party to the within action.  My business address is 555 West
Fifth Street, Suite 4000, Los Angeles, CA 90013.

6

7   On August 16, 2018, I served the foregoing document(s) described as **FIRST
AMENDED COMPLAINT** on all interested parties in this action as follows (or as on

8    the attached service list):

9         **SEE ATTACHED SERVICE LIST**

10

11 ☒ (VIA U.S. MAIL) I served the foregoing document(s) by U.S. Mail, as
follows:  I placed true copies of the document(s) in a sealed envelope

12   addressed to each interested party as shown above.  I placed each such
envelope with postage thereon fully prepaid, for collection and mailing at

13   Sidley Austin LLP, Los Angeles, California.  I am readily familiar with
Sidley Austin LLP's practice for collection and processing of

14   correspondence for mailing with the United States Postal Service.  Under
that practice, the correspondence would be deposited in the United States

15   Postal Service on that same day in the ordinary course of business.

16   I declare under penalty of perjury under the laws of the United States that the

17    foregoing is true and correct.

18   Executed on August 16, 2018, at Los Angeles, California.

19

20           *Jennifer Polzin*

21           Jennifer L. Polzin

22

23

24

25

26

27

28

235015560

1

## SERVICE LIST

| | |
|---|---|
| Michelle D. Blakemore<br>James H. Thebeau<br>Blakney A. Boggs<br>385 N. Arrowhead Ave., 4th Floor<br>San Bernardino, CA 92415<br>jthebeau@cc.sbcounty.gov<br>blakney.boggs@cc.sbcounty.gov | Counsel for Defendants<br>San Bernardino County and San<br>Bernardino County Sheriff's<br>Department |
| Nicola T. Hanna<br>David M. Harris<br>Joanne Osinoff<br>Grace Y. Park<br>Federal Building, Suite 7516<br>300 N. Los Angeles Street<br>Los Angeles, CA 90012<br>grace.park@usdoj.gov | Counsel for Defendant<br>United States of America |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28